CASE NO. 06-2869

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

JEANNE PHILLIPS, Administratrix of the Estate of Mark Phillips, Deceased,

Appellant

v.

COUNTY OF ALLEGHENY; NORTHWEST REGIONAL COMMUNICATIONS; ALLEGHENY COUNTY 9-1-1, f/k/a NORTHWEST REGIONAL COMMUNICATIONS; DANIEL NUSSBAUM; DANIELLE TUSH; BRIAN CRAIG; LEONARD DEUTSCH; RYAN GING; SUSAN ZURCHER; PHILLIP CESTRA

Appellees

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
Civil Action No. 05-1502

**PETITION OF APPELLEES NORTHWEST REGIONAL COMMUNICATIONS, DANIEL NUSSBAUM, DANIELLE TUSH, BRIAN CRAIG, LEONARD DEUTSCH, RYAN GING, SUSAN ZURCHER, AND PHILLIP CESTRA [JR.] FOR REHEARING OR REHEARING EN BANC**

ALAN E. JOHNSON
SCOTT G. DUNLOP
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
U.S. Steel Tower, Suite 2900, 600 Grant Street
Pittsburgh, PA 15219
Phone: (412) 803-1140
Attorneys for Appellees

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF COUNSEL ............................................................................1

INTRODUCTION...............................................................................................2

ARGUMENT .......................................................................................................4

    I. THE PLAINTIFF SHOULD NOT BE ALLOWED TO REPLEAD WITH REGARD TO DEFENDANT NUSSBAUM BECAUSE (A) DEFENDANT NUSSBAUM INVOKED QUALIFIED IMMUNITY, (B) PLAINTIFF EXPLICITLY REFUSED TO AMEND THE COMPLAINT IN THE FACE OF THE INDIVIDUAL DEFENDANTS' ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT, AND (C) ANY SUCH AMENDMENT WOULD BE INEQUITABLE AND FUTILE....................................................4

    II. THE PANEL'S HOLDING (OPINION, PAGE 22) THAT THE COMPLAINT "ADEQUATELY ALLEGES THAT [DEFENDANTS TUSH AND CRAIG] ACTED AFFIRMATIVELY BY PROVIDING MICHALSKI WITH CONFIDENTIAL 911 COMPUTER INFORMATION ABOUT MARK PHILLIPS THAT PERMITTED MICHALSKI TO HARM HIM" IS INCORRECT, BECAUSE THE COMPLAINT NOWHERE ALLEGES THAT DEFENDANTS TUSH AND CRAIG PROVIDED MICHALSKI WITH CONFIDENTIAL 911 COMPUTER INFORMATION. ........................8

    III. THE PANEL OPINION STATES THAT THE DISMISSALS OF DEFENDANTS DEUTSCH, GING, ZURCHER, AND CESTRA ARE AFFIRMED, BUT SUCH AFFIRMANCE IS NOT SET FORTH IN THE COURT'S JUDGMENT. ....................................................................10

    IV. THE PANEL DID NOT ADDRESS QUALIFIED IMMUNITY, EVEN THOUGH QUALIFIED IMMUNITY WAS INVOKED ON BEHALF OF THE INDIVIDUAL DEFENDANTS IN THEIR MOTION TO DISMISS AND IN THEIR APPELLATE BRIEF....................................................11

    V. THE JUDGMENT SHOULD REFLECT THE AFFIRMANCE IN THE OPINION OF THE DISMISSAL OF DEFENDANT NORTHWEST REGIONAL COMMUNICATIONS. ............................................12

VI. UNDER THE CIRCUMSTANCES OF THIS APPEAL, COSTS SHOULD NOT BE AWARDED AGAINST APPELLEES.................................................13

CONCLUSION ........................................................................................................14

# TABLE OF AUTHORITIES

## CASES

Behrens v. Pelletier, 516 U.S. 299 (1996) ........................................................ 1, 11

Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955 (2007) ...................... 5

Collins v. Christie, No. 06-4702, 2007 U.S. Dist. LEXIS 61579 (E.D. Pa. Aug. 22, 2007) ............................................................................................................... 13

County Concrete Corp. v. Township of Roxbury, 442 F.3d 159 (3d Cir. 2006).. 1, 5

DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003) ............................................... 5

DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989) ............................................................................................................... 10

Estate of Smith v. Marasco (Smith II), 430 F.3d 140 (3d Cir. 2005) .................... 10

Hunter v. Bryant, 502 U.S. 224 (1991) ...................................................... 1, 7, 12

Kaucher v. County of Bucks 455 F.3d 418 (3d Cir. 2006) .................................... 10

Mitchell v. Forsyth, 472 U.S. 511 (1985) ......................................................... 1, 11

Monell v. Dep't of Social Services, 436 U.S. 658 (1978) ...................................... 12

Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir. 2003) ...... 13

Robus v. Pennsylvania Dep't of Corrections, No. 04-2175, 2006 U.S. Dist. LEXIS 49943 (E.D. Pa. July 20, 2006) ...................................................................... 13

Saucier v. Katz, 533 U.S. 194 (2001) ........................................................ 1, 7, 12

Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006) ................. passim

Victory Outreach Center v. Melso, 371 F. Supp.2d 642 (E.D. Pa. 2004) .............. 13

Village of Willowbrook v. Olech, 528 U.S. 562 (2000) .......................................... 5

## UNITED STATES CONSTITUTION

Fourteenth Amendment ........................................................................................ 2, 4

## UNITED STATES CODE

42 U.S.C. § 1983 ....................................................................................... 2, 12

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 11 ........................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ........................................................................ 4, 5, 11

Fed. R. Civ. P. 12(e) ............................................................................... 7, 10

## PETITION OF APPELLEES NORTHWEST REGIONAL COMMUNICATIONS, DANIEL NUSSBAUM, DANIELLE TUSH, BRIAN CRAIG, LEONARD DEUTSCH, RYAN GING, SUSAN ZURCHER, AND PHILLIP CESTRA [JR.] FOR REHEARING OR REHEARING EN BANC

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, i.e., the panel's decision is contrary to this Court's decisions in Thomas v. Independence Township, 463 F.3d 285, 299-303 (3d Cir. 2006) and County Concrete Corp. v. Township of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006) as well as the Supreme Court's decisions in Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Behrens v. Pelletier, 516 U.S. 299, 306-09 (1996); Hunter v. Bryant, 502 U.S. 224, 227 (1991); and Mitchell v. Forsyth, 472 U.S. 511 (1985). In addition, this appeal involves a question of exceptional importance, i.e., whether a plaintiff who has explicitly stood on the complaint in opposing a motion for more definite statement may be entitled to file an amended complaint notwithstanding such position, particularly where the Individual Defendants have invoked qualified immunity.

ALAN E. JOHNSON

1

## INTRODUCTION

Plaintiff-Appellant brought this action against Petitioners, Defendants-Appellees Northwest Regional Communications ("NRC"), Daniel Nussbaum ("Nussbaum"), Danielle Tush ("Tush"), Brian Craig ("Craig"), Leonard Deutsch ("Deutsch"), Ryan Ging ("Ging"), Susan Zurcher ("Zurcher"), and Phillip Cestra ("Cestra")[1] (hereinafter collectively referred to as "Defendants" or "Petitioners") and others under the Fourteenth Amendment (substantive due process and equal protection) and 42 U.S.C. § 1983.   The Complaint also alleged certain supplemental state law claims.  Petitioners request rehearing or rehearing en banc on the following grounds:

1.   Plaintiff should not be allowed to replead with regard to Defendant Nussbaum, because (a) Defendant Nussbaum invoked qualified immunity, (b) Plaintiff explicitly refused to amend the Complaint in the face of the Individual Defendants' Alternative Motion for More Definite Statement, and (c) any such amendment would be inequitable and futile.

2.   The panel's holding (Opinion, page 22) that the Complaint "adequately alleges that [Defendants Tush and Craig] acted affirmatively by providing Michalski with confidential 911 computer information about Mark Phillips that

---

[1] Phillip Cestra, Jr., who is deceased, was the NRC dispatcher whom Plaintiff intended to sue.  Phillip Cestra, who had nothing to do with these events, is his father.

2

permitted Michalski to harm him" is incorrect, because the Complaint nowhere alleges that Defendants Tush and Craig provided Michalski with confidential 911 computer information.

3. The Panel Opinion states that the dismissals of Defendants Deutsch, Ging, Zurcher, and Cestra are affirmed, but such affirmance is not set forth in the Court's Judgment.

4. The Panel did not address qualified immunity, even though qualified immunity was invoked on behalf of the Individual Defendants in their Motion to Dismiss and in their appellate brief.

5. The Judgment should reflect the affirmance in the Opinion of the dismissal of Defendant Northwest Regional Communications.

6. Under the circumstances of this appeal, costs should not be awarded against Appellees.

The foregoing grounds for rehearing are elaborated in the following section of this Petition.

## ARGUMENT

**I.    THE PLAINTIFF SHOULD NOT BE ALLOWED TO REPLEAD WITH REGARD TO DEFENDANT NUSSBAUM BECAUSE (A) DEFENDANT NUSSBAUM INVOKED QUALIFIED IMMUNITY, (B) PLAINTIFF EXPLICITLY REFUSED TO AMEND THE COMPLAINT IN THE FACE OF THE INDIVIDUAL DEFENDANTS' ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT, AND (C) ANY SUCH AMENDMENT WOULD BE INEQUITABLE AND FUTILE.**

The Panel Opinion correctly held that the Complaint failed to state a state-created danger claim against Defendant Nussbaum, because "[t]he allegations in the complaint against defendant Nussbaum do not sufficiently allege that he acted affirmatively." (Opinion, p. 20).

However, the Panel also held:

> Nonetheless, the District Judge erred when he dismissed the complaint without offering Phillips the opportunity to amend her complaint. It does not matter whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment unless an amendment would be inequitable or futile.

(Opinion, p. 21).

Similarly, although the Panel correctly held that the Complaint failed to state a constitutionally cognizable Fourteenth Amendment equal protection claim, the Panel stated that the Plaintiff should have an opportunity to replead such claim.

4

(Opinion, pp. 36-42).[2] However, in the concluding section of its Opinion, the Panel referred only to the state-created danger claim as being subject to amendment. (Opinion, p. 43).

The present case differs from the usual scenario, because, here, the Plaintiff, in responding to Defendants' Alternative Motion for More Definite Statement, explicitly stood on her Complaint and refused to amend it. The Individual Defendants' Motion to Dismiss requested, in the alternative, that the District Court order Plaintiff to make a more definite statement of the claims against the Individual Defendants. (Appx pp. 22-23). However, Plaintiff consistently opposed this request, arguing that no such relief was necessary or appropriate. For

---

[2] The Panel, following the Second Circuit decision in DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003), held that a complaint alleging a "class of one" equal protection claim need not identify comparables. (Opinion, pp. 38-40). However, it is submitted that DeMuria overinterpreted Village of Willowbrook v. Olech, 528 U.S. 562 (2000), in this regard. Specifically, we do not know whether the complaint in Olech named comparables and, in any event, the Opinion of the Court in Olech did not address that precise issue. Unfortunately, the Olech complaint is not electronically available, as it predated electronic filing. It should be observed, however, that the Panel's ruling in this regard, which was evidently intended to guide the District Court on remand, may be inconsistent with County Concrete Corp. v. Township of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006) (affirming a Fed. R. Civ. P. 12(b)(6) dismissal of an equal protection facial challenge to a zoning ordinance where the complaint contained only conclusory allegations of similarly situated persons). It may also be the case that the Supreme Court has now adopted somewhat more stringent pleading requirements in Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955 (2007), which is well discussed in Section II of the Panel Opinion.

example, paragraph 3 of Plaintiff's "Answer" to the Individual Defendants' Motion to Dismiss stated:  "It is denied that, in the alternative, the Court should order Plaintiff to file an Amended Complaint providing a more definite statement of the Plaintiff's claims."  (Appx p. 48).  Plaintiff elaborated upon her opposition to the Individual Defendants' requests for a more definite statement in Plaintiff's brief in opposition to the Motion to Dismiss.  (Doc. No. 21: Plaintiff's Brief in Response to Individual Defendants' Motion to Dismiss at pp. 15-16).  Notwithstanding her position taken in the District Court, Plaintiff argued, for the first time in this Court, that "the District Court should have granted Plaintiff leave to amend."  (Appellant's Brief at p. 24).  Having expressly opposed such relief in the District Court, Plaintiff has waived it.  In re Surrick, 338 F.3d 224, 237 (3d Cir. 2003).

Furthermore, in no document filed by Plaintiff since the Complaint was filed in October, 2005, has Plaintiff ever suggested any affirmative act of Defendant Nussbaum that could possibly pass muster under this Circuit's state-created danger jurisprudence.  In addition, Defendant Nussbaum—who, according to the Complaint (Appx pp. 13-14), suspended and then terminated Michalski for the latter's unauthorized use of confidential computer information—could not possibly be liable under any equal protection theory.  Under these circumstances, amendment would be inequitable as well as futile.  Defendant Nussbaum invoked federal qualified immunity, and it is the essence of the doctrine of federal qualified

immunity that qualified immunity issues should be resolved "at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991); <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001). More than two years after the filing of this case, Defendant Nussbaum should not be burdened with continuing to have to defend a claim against him that is manifestly not actionable.

Alternatively, it is requested that the Court require the Plaintiff to amend the Complaint pursuant to Fed. R. Civ. P. 12(e) in the specific manner requested in the Individual Defendants' Motion to Dismiss. (Appx pp. 22-23). The Individual Defendants, including Defendant Nussbaum, clearly have such a right, since they invoked the doctrine of federal qualified immunity. <u>Thomas v. Independence Township</u>, 463 F.3d 285, 299-303 (3d Cir. 2006). Although a complaint does not have to anticipate a qualified immunity defense, a defendant invoking qualified immunity has a right to require the plaintiff to make a more definite statement of the claim. *Id.*

**II.**    **THE PANEL'S HOLDING (OPINION, PAGE 22) THAT THE COMPLAINT "ADEQUATELY ALLEGES THAT [DEFENDANTS TUSH AND CRAIG] ACTED AFFIRMATIVELY BY PROVIDING MICHALSKI WITH CONFIDENTIAL 911 COMPUTER INFORMATION ABOUT MARK PHILLIPS THAT PERMITTED MICHALSKI TO HARM HIM" IS INCORRECT, BECAUSE THE COMPLAINT NOWHERE ALLEGES THAT DEFENDANTS TUSH AND CRAIG PROVIDED MICHALSKI WITH CONFIDENTIAL 911 COMPUTER INFORMATION.**

The Panel's Opinion stated the following regarding the liability of

Defendants Tush and Craig under Plaintiff's state-created danger theory:

> Turning to Defendants Tush and Craig, we find that **the complaint adequately alleges** they acted affirmatively **by providing Michalski with confidential 911 computer information** about Mark Phillips that permitted Michalski to harm him. This allegation satisfies this element of our state-created danger analysis.

(Opinion, p. 22 (emphasis added)). Similarly, page 31 of the Opinion states: "The

complaint alleged that Michalski asked Tush and Craig for their help in obtaining

**confidential computer information** on Ferderbar and Mark Phillips, assistance

which they ultimately provided." (Emphasis added.).

**However, the Complaint nowhere alleged that Defendants Tush and**

**Craig provided Michalski with confidential 911 computer information.** (See

Plaintiff's Complaint at Appx pages 10-20, wherein that allegation cannot be

8

found).[3] The closest the Complaint comes to making any such allegation is the averment in paragraph 26 thereof: "Defendants Tush and Craig assisted Michalski knowing that they were accessing unauthorized personal information that had absolutely no relationship with their function as dispatchers and a 9-1-1 emergency call center." (Appx p. 13). Whatever may be the case with regard to federal notice pleading (which Section II of the Panel Opinion admirably explicates), Defendants Tush and Craig would be entitled, under this Court's qualified immunity jurisprudence, to a more definite statement of what "unauthorized personal information" they allegedly accessed and how that information allegedly caused Michalski to locate and kill Mark Phillips. Thomas v. Independence Township, 463 F.3d 285, 299-303 (3d Cir. 2006). Since, however, Plaintiff adamantly opposed Defendants' Alternative Motion for a More Definite Statement, Defendants Tush and Craig should simply be dismissed at this juncture. (See the discussion in Part I, *supra*.) Alternatively, assuming *arguendo* that Defendants Tush and Craig are not entitled to a simple dismissal of the Complaint, it is requested that the Court require Plaintiff to amend the Complaint pursuant to Fed.

---

[3] Defendants believe that Plaintiff cannot make that allegation consistent with the requirements of Fed. R. Civ. P. 11.

9

R. Civ. P. 12(e) in the specific manner requested in the Individual Defendants'

Motion to Dismiss. (Appx pp. 22-23).[4]

### III. THE PANEL OPINION STATES THAT THE DISMISSALS OF DEFENDANTS DEUTSCH, GING, ZURCHER, AND CESTRA ARE AFFIRMED, BUT SUCH AFFIRMANCE IS NOT SET FORTH IN THE COURT'S JUDGMENT.

The Panel Opinion correctly "conclude[d] that it would be futile to permit

amendment as to the remaining defendants [the Defendants other than Tush, Craig,

and Nussbaum]. . . ." (Opinion, p. 36). Similarly, the Opinion states that the Court

"will affirm the District Court's dismissal of the remaining defendants [the

---

[4] If the Panel or the en banc Court grants rehearing, attention should also be called to first full paragraph on page 26 of the Opinion, which states that Defendants Tush and Craig were put on notice of the danger, **after** they allegedly assisted Michalski, by subsequent telephone calls from Michalski. This holding implicitly assumes that the holding in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), is inoperative to the extent that a defendant's subsequent knowledge may require him/her to take affirmative action to rectify an earlier act that is alleged to be affirmative. It is submitted that the type of alleged post-act knowledge of foreseeability discussed in the first full paragraph of page 26 of the Opinion (see also pages 31-32 of the Opinion) is insufficient, by itself, to overcome the DeShaney holding. As for the generic reference to "Defendants" in paragraph 27 of the Complaint (discussed in footnote 5 of the Opinion), it is submitted that such generic reference does not comply with this Court's jurisprudence holding that the facts supporting liability of each Defendant must be identified. Kaucher v. County of Bucks 455 F.3d 418, 432 n.7 (3d Cir. 2006) (citing and quoting Estate of Smith v. Marasco (Smith II), 430 F.3d 140, 151 (3d Cir. 2005)). And, again, at a minimum, Plaintiff should be required to make a more definite statement of these matters where, as here, qualified immunity has been invoked. Thomas v. Independence Township, 463 F.3d 285, 299-303 (3d Cir. 2006).

Defendants other than Tush, Craig, and Nussbaum]." (Opinion, p. 43). However, the Judgment filed by the Panel does not reflect this holding. The Judgment should be amended to reflect that the District Court's dismissals of Defendants Deutsch, Ging, Zurcher, and Cestra are affirmed.

## IV.    **THE PANEL DID NOT ADDRESS QUALIFIED IMMUNITY, EVEN THOUGH QUALIFIED IMMUNITY WAS INVOKED ON BEHALF OF THE INDIVIDUAL DEFENDANTS IN THEIR MOTION TO DISMISS AND IN THEIR APPELLATE BRIEF.**

The Individual Defendants invoked qualified immunity in their Motion to Dismiss (Appx p. 22, first line), in their Brief in Support of their Motion to Dismiss (Doc. No. 5 at pp. 18-23), and in the Brief of Appellees (pp. 37-45). The Panel criticized the District Court for citing a Third Circuit decision that discussed an issue in the context of qualified immunity: "Although such a determination may be germane when deciding qualified immunity, it is not relevant to a determination at the 12(b)(6) dismissal stage." (Opinion, pp. 33-34). By this statement, the Panel appeared to be operating on the premise that qualified immunity is not a proper subject of a Fed. R. Civ. P. 12(b)(6) motion. This premise is, however, inconsistent with both Supreme Court and Third Circuit Court of Appeals authority. Behrens v. Pelletier, 516 U.S. 299, 306-09 (1996); Mitchell v. Forsyth, 472 U.S. 511 (1985); Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006). The Panel or the en banc Court should rehear this appeal and consider, *inter alia*, how qualified immunity applies to the Plaintiff's claims, as discussed in

11

the Brief of Appellees. Such rehearing would also be consistent with the principle that qualified immunity issues should be resolved "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Saucier v. Katz, 533 U.S. 194, 200-01 (2001). It has been more than two years since this action was filed, and the Individual Defendants are entitled to a determination of their entitlement to qualified immunity in connection with their Motion to Dismiss.

## V. THE JUDGMENT SHOULD REFLECT THE AFFIRMANCE IN THE OPINION OF THE DISMISSAL OF DEFENDANT NORTHWEST REGIONAL COMMUNICATIONS.

The Panel Opinion correctly "conclude[d] that it would be futile to permit amendment as to the remaining defendants [the Defendants other than Tush, Craig, and Nussbaum]. . . ." (Opinion, p. 36). Similarly, the Opinion states that the Court "will affirm the District Court's dismissal of the remaining defendants [the Defendants other than Tush, Craig, and Nussbaum]." (Opinion, p. 43). However, the Judgment filed by the Panel does not reflect this holding. The Judgment should be amended to reflect that the District Court's dismissal of Defendant Northwest Regional Communications is affirmed.

Such affirmance is consistent with the Panel's observation that "the Supreme Court's decision in Monell v. Dep't of Social Services, 436 U.S. 658 (1978) bars § 1983 suits against municipalities based on respondeat superior and Phillips failed to allege facts supporting an official pattern or practice claim giving rise to

12

constitutional injury." (Opinion, pp. 6-7 n.1). The <u>Monell</u> holding applies even to private corporations that are alleged to have been acting "under color of state law" within the meaning of § 1983 jurisprudence. <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003) (applying <u>Monell</u> to Prison Health Services, Inc.); <u>Collins v. Christie</u>, No. 06-4702, 2007 U.S. Dist. LEXIS 61579, at *15 n.10 (E.D. Pa. Aug. 22, 2007); <u>Robus v. Pennsylvania Dep't of Corrections</u>, No. 04-2175, 2006 U.S. Dist. LEXIS 49943, at *21 (E.D. Pa. July 20, 2006); <u>Roach v. SCI Graterford Med. Dep't</u>, 398 F. Supp.2d 379, 388 (E.D. Pa. 2005); <u>Victory Outreach Center v. Melso</u>, 371 F. Supp.2d 642, 646 (E.D. Pa. 2004).

Therefore, the Judgment should be amended to reflect that the dismissal of Defendant Northwest Regional Communications is affirmed.

## VI.   UNDER THE CIRCUMSTANCES OF THIS APPEAL, COSTS SHOULD NOT BE AWARDED AGAINST APPELLEES.

Contradictions exist between the Panel's Opinion and its Judgment. The Opinion "conclude[d] that it would be futile to permit amendment as to the remaining defendants [the Defendants other than Tush, Craig, and Nussbaum]. . . ." (Opinion, p. 36). Similarly, the Opinion states that the Court "will affirm the District Court's dismissal of the remaining defendants [the Defendants other than Tush, Craig, and Nussbaum]." (Opinion, p. 43). However, the Judgment filed by the Panel does not reflect this holding. The Judgment should be amended to reflect

13

that Defendants Northwest Regional Communications, Deutsch, Ging, Zurcher, and Cestra are dismissed with prejudice.[5] Therefore, even without any further modification of the Panel decision, it is clear that the District Court's decision was substantially affirmed. It was reversed only with regard to Defendants Tush, Craig, and Nussbaum. Moreover, rehearing on the issues discussed above may result in affirmance of all of the District Court's dismissals. Under such circumstances, the awarding of costs to the Plaintiff and against Defendants in the Judgment is unwarranted. At the very least, the parties to the appeal should bear their own costs. *See* Fed. R. App. P. 39(a)(4) ("if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders").

## CONCLUSION

On the basis of the foregoing Argument, the Panel or the en banc Court should rehear this appeal and affirm the dismissal of all federal claims against all Defendants. In the alternative, the Panel or the en banc Court should require the Plaintiff to file a more definite statement of her claims against Defendants Nussbaum, Tush, and Craig pursuant to the qualified immunity procedure of Thomas v. Independence Township, 463 F.3d 285, 299-303 (3d Cir. 2006), and affirm the dismissal of all the other Defendants.

---

[5] Although undersigned counsel does not represent Defendants County of Allegheny and Allegheny County 9-1-1 (which is not a legal entity), the dismissals of those Defendants should be affirmed for the same reason.

14

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By:    s/ Alan E. Johnson
       ALAN E. JOHNSON  PA89690
       aejohnson@mdwcg.com
       SCOTT G. DUNLOP  PA41638
       sgdunlop@mdwcg.com
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA 15219
Phone:  (412) 803-1140
Fax:  (412) 803-1188

Attorneys for Defendants-Appellees
Northwest Regional Communications,
Daniel Nussbaum, Danielle Tush, Brian
Craig, Leonard Deutsch, Ryan Ging, Susan
Zurcher, and Phillip Cestra [Jr.]

12/588081.v1

15

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2869

_____

JEANNE PHILLIPS, Administratrix of the
Estate of Mark Phillips, deceased,

Appellant

v.

COUNTY OF ALLEGHENY; NORTHWEST REGIONAL
COMMUNICATIONS; ALLEGHENY COUNTY 9-1-1,
f/k/a NORTHWEST REGIONAL COMMUNICATIONS;
DANIEL NUSSBAUM; DANIELLE TUSH; BRIAN
CRAIG; LEONARD DEUTSCH; RYAN GING; SUSAN
ZURCHER; PHILLIP CESTRA

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. No. 05-cv-1502)
District Judge:  The Honorable Arthur J.  Schwab

_____

ARGUED JUNE 26, 2007



EXHIBIT
A

BEFORE: FISHER, NYGAARD,
and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed February 5, 2008)

_____

Philip A. Ignelzi, Esq.(Argued)
Michael A. Murphy, Esq.
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA 15222

<u>Counsel for Appellant</u>

Scott G. Dunlop, Esq.
Stephen J. Poljak, Esq. (Argued)
Alan E. Johnson, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
600 Grant Street, 2900 U.S. Steel Tower
Pittsburgh, PA 15219

<u>Counsel for Appellees Northwest Regional
Communications, Nussbaum, Tush, Craig, Deutsch,
Ging, Zurcher, and Cestra</u>

Wendy Kobee, Esq.
Michael H. Wojcik, Esq.
Office of Allegheny County Law Department
445 Fort Pitt Boulevard

300 Fort Pitt Commons Building
Pittsburgh, PA 15219

    <u>Counsel for Appellees County of Allegheny and</u>
    <u>Allegheny County 911</u>

---

## OPINION OF THE COURT

---

NYGAARD, <u>Circuit Judge</u>.

Jeanne Phillips ("Phillips"), individually and in her capacity as administrator of the estate of her son, decedent Mark Phillips, appeals the District Court's dismissal of her claims against various defendants for violations of 42 U.S.C. § 1983. The District Court, in deciding a motion under FED.R.CIV.P. 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to Phillips. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). Moreover, in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Because the District Court did not follow these dictates, we will reverse in part and remand.

### I.

As is typical with state-created danger cases, the facts here are inescapably tragic. Beginning in October of 2003, Michael Michalski, who was employed by the Allegheny

3

County 911 Call Center as a dispatcher, used his position to surreptitiously gain access to unauthorized information. Specifically, Michalski ran multiple searches of the 911 Call Center's computer network and databases in an attempt to locate the whereabouts of his former girlfriend, Gretchen Ferderbar, and her then-boyfriend, Mark Phillips. By October 19, 2003, Daniel Nussbaum, who was Michalski's supervisor, became aware of Michalski's actions and placed Michalski on a one-week suspension, but allowed Michalski to remain on the job for a week. The day before the suspension took effect, Michalski again used the 911 Call Center's computer network and databases without authorization to access personal information regarding Mark Phillips. Michalski specifically accessed Mark Phillips' motor vehicle and license plate registrations in an effort to track and locate Mark Phillips' whereabouts.

During the evening hours of October 28, 2003, and the early morning hours of October 29, 2003, while on suspension, Michalski made numerous telephone calls to the 911 Call Center and spoke with Danielle Tush and Brian Craig. During those telephone calls, Michalski requested information that would assist him in locating Mark Phillips. Tush and Craig assisted Michalski, aware that they were accessing unauthorized personal information that had no relationship to their jobs as dispatchers for the 911 Call Center.

Gretchen Ferderbar contacted Nussbaum to inform him that Michalski had accessed the 911 Call Center's computer system in his position as a dispatcher to obtain information which enabled him to track and locate her and Mark Phillips at

4

Mark Phillips' residence. After confirming that Michalski had improperly accessed information regarding Mark Phillips, Nussbaum met with Michalski at the 911 Call Center and confronted him about his repeated and unauthorized use of the 911 Call Center's computer system. Michalski admitted to Nussbaum that he had used the 911 Call Center's computer system to gain access to unauthorized information regarding Mark Phillips, and Nussbaum terminated Michalski's employment with the 911 Call Center.

Recognizing Michalski's "volatile appearance" and apparently concerned that Michalski might commit a violent act, Nussbaum placed two telephone calls. Nussbaum left either a voicemail message on Ferderbar's cellular telephone warning her to be careful and to be on guard for Michalski or Nussbaum warned her in person — the record is unclear. What is clear, however, is that Nussbaum also contacted the McCandless Township Police Department to notify them of Michalski's volatile state. Nussbaum made no effort, however, to contact the police departments of Shaler Township or the Borough of Carnegie where Federbar and Phillips, respectively, lived. Despite recognizing that Michalski had used the 911 Call Center's computer system to track Mark Phillips, Nussbaum made no effort to detain Michalski, to deter him from reaching Mark Phillips or to warn Mark Phillips of Michalski's potentially violent behavior.

Later that same day, Michalski contacted dispatchers at the 911 Call Center, including Tush, Craig, Leonard Deutsch, Ryan Ging, Susan Zurcher and Phillip Cestra, to explain the circumstances of his termination. Michalski indicated that he "had nothing left to live for" and that Ferderbar and Mark

5

Phillips were going to "pay for putting him in his present situation." Despite this contact by Michalski, none of the dispatchers contacted either Ferderbar or Mark Phillips or the police departments of the Township of Shaler or the Borough of Carnegie. Later that afternoon, Michalski shot and killed Mark Phillips with a handgun. Michalski also shot and killed Ferderbar and her sister.

Jeanne Phillips, as Administratrix of her son's estate, sued numerous defendants, including Allegheny County, Allegheny County 911, 911 Supervisor Nussbaum and 911 Dispatchers Tush, Craig, Deutsch, Ging, Zurcher and Cestra, alleging violations of Mark Phillips' civil rights under 42 U.S.C. § 1983 and alleging, through pendant jurisdiction, a wrongful death action, and a survivorship action. In response, Appellees moved to dismiss Phillips' claims pursuant to Federal Rule 12(b)(6) and the district judge granted the motion.[1]

---

[1] Rather than filing its own motion to dismiss, Allegheny County filed a motion for stay of time to file a responsive pleading pending resolution of the motion to dismiss. Phillips did not oppose the motion to stay and the District Court granted it. After consideration of the papers, the District Court granted the motion to dismiss the complaint and in its final order lifted the stay, granted the motion to dismiss in its entirety, and entered judgment for all defendants. The District Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and transferred the case to the Court of Common Pleas of Allegheny County. Appellee Allegheny County 911 did not join in the motion to stay, and the District
(continued...)

6

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. The standard of review for a dismissal under FED.R.CIV.P. 12(b)(6) is *de novo*.    *Omnipoint Communications Enters., L.P. v. Newtown Township*, 219 F.3d 240, 242 (3d Cir. 2000). Because this standard requires us to review the District Court's order anew and without any deference, we pause here to re-evaluate our *de novo* standard of review in light of the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955 (2007).[2]

---

[1](...continued)
Court apparently never required it to file a responsive pleading, most likely because the District Court considered Allegheny County 911 to be part of or coextensive with either Northwest (which filed a motion to dismiss) or Allegheny County (which filed a motion to stay). Although the District Court closed the case by entering judgment for all defendants on all counts, the Court did not have before it a motion to dismiss from the County or Allegheny County 911. The parties on appeal do not mention this issue, presumably because it makes no difference in light of the fact that the Supreme Court's decision in *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) bars § 1983 suits against municipalities based on respondeat superior and Phillips failed to allege facts supporting an official pattern or practice claim giving rise to constitutional injury.

[2] *See In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3d Cir. 2000) (*"de novo* means [that] . . . the court's
(continued...)

7

After oral argument, we asked the parties to brief the *Twombly* decision's impact on pleading standards generally and on this appeal specifically. Few issues in civil procedure jurisprudence are more significant than pleading standards, which are the key that opens access to courts. In *Twombly*, the Supreme Court held that the plaintiffs failed to state a claim under § 1 of the Sherman Antitrust Act. The plaintiffs had alleged that defendants had engaged in parallel conduct, but had pleaded no set of facts making it plausible that such conduct was the product of a conspiracy. In reaching this decision, the Supreme Court rejected language that long had formed part of the Rule 12(b)(6) standard, namely the statement in *Conley v. Gibson*, 355 U.S. 41 (1957), that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.

What makes *Twombly's* impact on the Rule 12(b)(6) standard initially so confusing is that it introduces a new "plausibility" paradigm for evaluating the sufficiency of complaints. At the same time, however, the Supreme Court never said that it intended a drastic change in the law, and indeed strove to convey the opposite impression; even in rejecting *Conley's* "no set of facts" language, the Court does not appear to have believed that it was really changing the Rule 8 or Rule 12(b)(6) framework. Therefore, our review of how *Twombly* altered review of Rule 12(b)(6) cases must begin by

---

[2](...continued)
inquiry is not limited to or constricted by the record . . . nor is any deference due the . . . conclusions [under review]").

8

recognizing the § 1 antitrust context in which it was decided. *See e.g., Twombly,* 127 S. Ct. at 1963 ("We granted certiorari to address the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct."). Outside the § 1 antitrust context, however, the critical question is whether and to what extent the Supreme Court altered the general Rule 12(b)(6) standard.

Before *Twombly,* that standard had been well-established for decades. Our typical statement of the standard has instructed that:

> The applicable inquiry under Rule 12(b)(6) is well-settled. Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215-16 (3d Cir. 2002) (internal citations omitted). Another common formulation of the standard, which does not include the "no set of facts" language, reads:

9

> In evaluating the propriety of the dismissal, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

In determining how *Twombly* has changed this standard, we start with what *Twombly* expressly leaves intact. The Supreme Court reaffirmed that FED.R.CIV.P. 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" and that this standard does not require "detailed factual allegations." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47). The Supreme Court also reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *See id.* at 1964-65, 1969 n.8. The Supreme Court did not address the point about drawing reasonable inferences in favor of the plaintiff, but we do not read its decision to undermine that principle.

We find two new concepts in *Twombly*. First, in its general discussion of Rules 8 and 12(b)(6), the Supreme Court used certain language that it does not appear to have used before. The Court explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

10

factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (alteration in original) (internal citations omitted). The Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965 n.3. Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 1966. The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 & n.3.

Second, the Supreme Court disavowed certain language that it had used many times before – the "no set of facts" language from *Conley*. *See id.* at 1968. It is clear that the "no set of facts" language may no longer be used as part of the Rule 12(b)(6) standard. As the Court instructed, "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969. We find that these two aspects of the decision are intended to apply to the Rule 12(b)(6) standard in general. *See Iqbal v. Hasty*, 409 F.3d 143, 157 n.7 (2d Cir. 2007) ("[I]t would be cavalier to believe that the Court's rejection of the 'no set of facts' language from *Conley* . . . applies only to section 1 antitrust claims.").

A.

11

While the Supreme Court's emphasis on Rule 8's requirement of a "showing" is new, the Court also expressly reaffirmed that Rule 8 requires only a short and plain statement of the claim and its grounds. *Twombly*, 127 S. Ct. at 1964, 1965 n.3 (citing *Conley*, 355 U.S. at 47). Even the dissent in *Twombly* did not believe that the requirement of a Rule 8 "showing," by itself, had any other meaning. *See Twombly*, 127 S. Ct. at 1979 n.6 (Stevens, J., dissenting) ("The majority is correct to say that what the Federal Rules require is a 'showing' of entitlement to relief. Whether and to what extent that 'showing' requires allegations of fact will depend on the particulars of the claim."). However, the *Twombly* decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case — some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964. Indeed, taking *Twombly* and the Court's contemporaneous opinion in *Erickson v. Pardus,* 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. *See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007). Put another way, in light of *Twombly*, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but

12

also the "grounds" on which the claim rests. *See Twombly*, 127 S.Ct. at 1965 n.3.

B.

The second important concept we take from the *Twombly* opinion is the rejection of *Conley's* "no set of facts" language. The *Conley* language was problematic because, for example, it could be viewed as requiring judges to speculate about undisclosed facts. "This famous observation," the Court held, "has earned its retirement. The ['no set of facts'] phrase [in *Conley*] is best forgotten as an incomplete, negative gloss on an accepted pleading standard: Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct at 1969 n.8. After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of [the proscribed] conduct." *Id.* The Supreme Court appears to have rejected a "hyper-literal" understanding of *Conley's* "no set of facts" language. As the Supreme Court explained,

> [t]his "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings. . . . On such a focused and literal reading of *Conley's* no set of facts, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleading left open the possibility that a plaintiff

> might later establish some set of [undisclosed]
> facts to support recovery.

*Twombly*, 127 S. Ct. at 1968 (alteration in original). *See also* Geoffrey C. Hazard, *From Whom No Secrets Are Hid,* 76 Tex. L. Rev. 1665, 1685 (1998) (explaining that "literal compliance" with *Conley* "could consist simply of giving the names of the plaintiff and the defendant, and asking for judgment") (cited for related proposition in *Twombly*, 127 S. Ct. at 1969). We have already recognized principles that preclude the hyper-literal reading of *Conley's* language rejected in *Twombly*.[3]

In rejecting the *Conley* language, the Supreme Court was careful to base its analysis in pre-existing principles. *See id.* at 1968-69 & n.8. The Court emphasized throughout its opinion that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement. *See id.* at 1964, 1965, 1973 n.14, 1974. Indeed, the Court cited *Twombly* just days later as authority for traditional Rule 8 and 12(b)(6) principles. *See Erickson,* 127 S. Ct. at 2200.

Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and

---

[3.] Recent cases in which we recited the *Conley* language but did not apply it in the hyper-literal sense which *Twombly* rejects include (in addition to those cited above), *Leuthner v. Blue Cross and Blue Shield of Ne. Pa.,* 454 F.3d 120, 129-131 (3d Cir. 2006) (compare majority opinion and dissent), *Pryor,* 288 F.3d at 564-65, and *Levy v. Sterling Holding Co.,* 314 F.3d 106, 119 (3d Cir. 2002).

14

apply the Rule 12(b)(6) standard, attentive to context and an showing that "the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964. It remains an acceptable statement of the standard, for example, that courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinker*, 292 F.3d at 374 n.7. *See also Twombly*, 127 S. Ct. at 1969 n.8 (citing as consistent with its rejection of the "no set of facts" language the statement that "if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief, the motion to dismiss should not have been granted") (citation omitted).

## C.

The more difficult question raised by *Twombly* is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime. *See id.* at 1988 (Stevens, J., dissenting) ("Whether the Court's actions will benefit only defendants in antitrust treble-damages cases, or whether its test for the sufficiency of a complaint will inure to the benefit of all civil defendants, is a question that the future will answer."). The answer to this question is difficult to divine. Numerous references to "plausibility" in *Twombly* seem to counsel reliance on the concept as a standard for notice pleading. The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" in order to survive a motion to

15

dismiss. 127 S.Ct. at 1974. Relying on this, the Court of Appeals for the Tenth Circuit has held that

> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177

(10th Cir. 2007). Yet, the *Twombly* decision repeatedly indicated that the Court was not adopting or applying a "heightened pleading standard." 127 S.Ct. at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). We are not alone in finding the opinion confusing. *See e.g. Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) ("These conflicting signals create some uncertainty as to the intended scope of the Court's decision.").

The issues raised by *Twombly* are not easily resolved, and likely will be a source of controversy for years to come. Therefore, we decline at this point to read *Twombly* so narrowly as to limit its holding on plausibility to the antitrust context. Reading *Twombly* to impose a "plausibility" requirement outside the § 1 context, however, leaves us with the question of what it might mean. "Plausibility" is related to the requirement of a Rule 8 "showing." In its general discussion, the Supreme Court explained that the concept of a "showing" requires only notice

16

of a claim and its grounds, and distinguished such a showing from "a pleader's 'bare averment that he wants relief and is entitled to it.'" *Twombly*, 127 S. Ct. at 1965 n.3. While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id* at 1965.

The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Id.* This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*

## D.

As Professor Edward H. Cooper has pointed out, all of the foregoing discussion can be reduced to this proposition: Rule 8(a)(2) has it right. *See* Edward H. Cooper, *Notice Pleading: The Agenda After Twombly,* 5 (January 2008) (unpublished manuscript, on file with the Administrative Office of the United States Courts, Rules Committee Support Office), *available at* www.uscourts.gov/rules/Agenda%20books/st2008-01.pdf. This rule requires not merely a short and plain statement, but instead mandates a statement "showing that the pleader is entitled to relief." That is to say, there must be some showing sufficient to justify moving the case beyond the

17

pleadings to the next stage of litigation. The complaint at issue in this case clearly satisfies this pleading standard, making a sufficient showing of enough factual matter (taken as true) to suggest the required elements of Phillips' claims.

### III.

Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Phillips alleges a deprivation of her son's right to life, liberty and bodily integrity under the Fourteenth Amendment to the Constitution. Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment. *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1368 (3d Cir. 1992) (citing *Ingraham v. Wright*, 430 U.S. 651, 672-74 (1977)).

However, the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens. *See DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). The state-created danger theory operates as an exception to that general rule and requires plaintiffs to meet a four-part test: (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that

18

otherwise would not have existed.[4] *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir.2006) (quotations and footnotes omitted); *see also Rivas v. City of Passaic*, 365 F.3d 181, 194 (3d Cir. 2004). Here, the District Court dismissed Phillips' complaint under a Rule 12(b)(6) motion, based upon her failure to adequately plead the first, second and fourth elements of the test — that the harm was foreseeable, that the state actor's behavior "shocked the conscience," and that the defendant's conduct rendered Mark Phillips more vulnerable to danger. *See Bright,* 443 F.3d at 281; *Rivas v. City of Passaic*, 365 F.3d 181, 194 (3d Cir. 2004). Because the District Court erred in its analysis of several elements, we will discuss each in turn.

A.

We begin with the fourth element, the requirement of an affirmative act, because our conclusion obviates the need to analyze the other three elements with respect to the claim against Nussbaum. State actors must use their authority to create an opportunity that otherwise would not have existed for the third-party's crime to occur. *Kniepp*, 95 F.3d at 1208. In *Bright*, we stressed that under the fourth element of a state-created danger claim,

---

[4] Neither party addresses whether Nussbaum, Tush and Craig are indeed state-actors. The complaint alleges that these defendants were both employees of the Northwest Corporation and Allegheny County, and accepting this allegation as true, we will treat them as state-actors for purposes of this appeal.

> [l]iability . . . is predicated upon the states'
> *affirmative acts* which work to the plaintiff's
> detriment in terms of exposure to danger. It is the
> *misuse of state authority, rather than a failure to
> use it*, that can violate the Due Process Clause.

443 F.3d at 282 (emphasis added) (quoting *D.R. by LR.*, 972
F.2d at 1374). The line between action and inaction may not
always be clear. However, we have never found a state-created
danger claim to be meritorious without an allegation and
subsequent showing that state authority was affirmatively
exercised in some fashion.

The allegations in the complaint against defendant
Nussbaum do not sufficiently allege that he acted
"affirmatively." Specifically, Phillips alleges that Nussbaum
misused his authority by notifying the wrong authorities of the
dangers Michalski posed to Mark Phillips. Also, Phillips alleges
that Nussbaum misused his authority by deferring Michalski's
employment suspension, with full knowledge that Michalski
was using the 911 Call Center's computers to improperly access
confidential information about Mark Phillips — information
which he used to determine Mark Phillips' whereabouts, and to
track his movements. This misuse of Nussbaum's authority,
Phillips alleges, worked to Mark Phillips' detriment by exposing
him to a continuing danger, and by allowing Michalski to harm
Mark Phillips. Phillips' difficulty, however, is that these
allegations, at their core, are omissions, not commissions —
inactions rather than actions. To be sure, it has been sufficiently
alleged that Nussbaum's performance worked to Mark Phillips'

20

detriment in terms of exposure to danger. But, that is only a portion of our test.

Our jurisprudence requires that Phillips allege an affirmative action, rather than inaction or omission. *Bright*, 443 F.3d at 282 (citing *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir.1992) (en banc)). Phillips' complaint does not make such an allegation against Nussbaum and, hence, no state- created danger claim has been sufficiently pleaded.

Nonetheless, the District Judge erred when he dismissed the complaint without offering Phillips the opportunity to amend her complaint. It does not matter whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). In *Shane*, we held that when dismissing for a failure to state a claim:

> [W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the

21

complaint, at which time an order to dismiss the
action would be appropriate.

*Id.* at 116 (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951
n. 1 (3d Cir.1976). Because Phillips was not given such an
opportunity, we will remand to allow her to decide whether to
stand on her complaint or attempt an amendment so as to
properly allege an affirmative act by defendant Nussbaum.

Turning to defendants Tush and Craig, we find that the
complaint adequately alleges they acted affirmatively by
providing Michalski with confidential 911 computer information
about Mark Phillips that permitted Michalski to harm him. This
allegation satisfies this element of our state-created danger
analysis.

However, pleading an affirmative act by a state actor is
not enough: the complaint must also plead a direct causal
relationship between the affirmative act and plaintiff's harm.
*Kaucher*, 455 F.3d at 432. The direct causal connection
between the affirmative actions of Tush and Craig (actively
providing Michalski with requested confidential information
about Phillips) and the ultimate harm to Mark Phillips is well
pleaded. The complaint alleges that after Tush and Craig
provided Michalski with confidential information, Michalski
used that information to hunt down and kill Mark Phillips.

In sum, under this element, Phillips has sufficiently
alleged that Tush and Craig undertook affirmative actions which
worked to Mark Phillips' detriment by exposing him to danger

22

and that there is a direct causal relationship between their harm and the defendants' actions.

We divert our discussion here to rectify an incorrect holding by the District Court on this point. As to this fourth element of our state-created danger analysis, the District Court determined that Phillips had failed to allege that defendants Tush and Craig "rendered Mark Phillips more vulnerable to danger." Specifically, the District Court noted that the complaint fails to allege where the shooting took place, and reasoned that if the shootings did not occur at Mark Phillips' residence, the unauthorized information provided by Tush and Craig did not render him vulnerable to danger. This was simply wrong. Where Mark Phillips was killed is not dispositive. At this preliminary pleading stage, it is reasonable to infer that Michalski could have gained relevant information at Mark Phillips' house as to his whereabouts, which could have directly assisted Michalski in stalking and killing him.

Such an unduly crabbed reading of the complaint denies Phillips the inferences to which her complaint is entitled. Based on the allegations in Phillips' complaint and reasonable inferences drawn from those allegations, Phillips may well be able to prove facts that would satisfy the four elements of the state-created danger analysis with respect to Tush and Craig. Therefore, Phillips has alleged the deprivation of an actual constitutional right, the substantive due process right to life and liberty under the Fourteenth Amendment and we will reverse the District Court's contrary determination.

B.

23

To properly allege a state-created danger claim, a plaintiff must additionally plead that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). As to foreseeability, the District Court initially determined that since there were "no allegations in the complaint that Michalski had a history of violence or, if he did, that any of the defendants were aware of this history of violence," the harm caused by Michalski was not foreseeable. We have never held that to establish foreseeability, a plaintiff must allege that the person who caused the harm had a "history of violence." Indeed, these types of cases often come from unexpected or impulsive actions which ultimately cause serious harm. For example, in *Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir. 1996), it was alleged that when a police officer left an intoxicated woman outside alone late at night, ordinary common sense and experience (in this instance attributed to the officer) sufficiently informed the officer of the forseeability of harm to the woman. This information was sufficient to put him on notice that leaving the woman significantly enhanced the risk of harm to her. We concluded that the harm incurred by the woman in *Kneipp* was foreseeable. *Id.* at 1208.

Also, in *Rivas, supra.,* it was alleged that because the state actors were emergency medical technicians, their expertise equipped them with concrete information that a seizure victim should not be restrained. The information that they had was sufficient to put them on notice of the harm that would result if they failed to tell the police officers who arrived on the scene to assist the emergency medical technicians with the seizure victim. We concluded that, in the context of a state-created

24

danger claim, the harm to the seizure victim was foreseeable. 365 F.3d at 194.

Conversely, in *Morse*, there was no allegation that the school district had sufficiently concrete information about the risk of violence presented by the perpetrator or other trespassers on school property to put the school district on notice of the harm that might result from a propped-open door. Therefore, when the school district employees, contrary to their own regulations, unlocked the door for the contractors to work, and the perpetrator of the violent incident entered through that open door, we held that the school district lacked sufficiently concrete information to consider its action a foreseeable cause of the harm to the teacher who was shot. As we explained, the harm was "too attenuated" because the only notice to the school district that the harm might occur was that the person who ultimately shot the teacher had been loitering in the hallways the week before the killing. *Morse*, 132 F.3d at 908-09. Knowledge of someone loitering, in and of itself, did not provide defendants with notice of a risk of violence. To adequately plead foreseeability then, we require a plaintiff to allege an awareness on the part of the state actors that rises to level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm. Turning to the complaint here, such an awareness was clearly alleged as to Tush and Craig.

Tush and Craig were dispatchers at the Allegheny County 911 Call Center. Starting at paragraph 23, Phillips' complaint adequately establishes that Tush and Craig were actually aware based on concrete information of the risk of harm. First, paragraph 23 establishes that after being suspended from his job,

25

Michalski called the 911 Call Center and spoke with Tush and Craig. Paragraph 24 alleges that Michalski requested information that would assist Michalski in locating Phillips. In paragraph 26, Phillips alleges that Tush and Craig assisted Michalski. The complaint additionally alleges (paragraph 27) that Tush and Craig were aware that the relationship between Ferderbar and Michalski had recently ended and that Michalski was in a distraught mental state as a result.[5]

At paragraph 40, the complaint alleges that Michalski again contacted the 911 Call Center and spoke with Tush and Craig, among others. During this conversation, Michalski allegedly indicated that he "had nothing left to live for" and that Ferderbar and Mark Phillips "were going to pay for putting him in his present situation." We view this allegation as putting Tush and Craig on notice that their actions in giving Michalski the unauthorized information about Mark Phillips significantly enhanced the risk of harm to him. The alleged statement by Michalski also made Tush and Craig actually aware of the risk to Mark Phillips. Therefore, the complaint adequately alleges foreseeability as to these two defendants and the District Court's determination to the contrary will be reversed.

---

[5] At paragraph 27, the complaint alleges that "[d]efendants were aware that the relationship between Ferderbar and Michalski had recently ended and that Michalski was distraught over this." While this paragraph does not specifically aver that Tush and Craig were aware of this, they certainly are "defendants" in this case and the generic use of that term includes them.

26

The District Court noted that the only individuals who were alleged to have accessed Mark Phillips' personal information on the 911 computers were Tush and Craig. Therefore, the Court also dismissed the state-created danger counts against all other remaining defendants.

The gist of the allegations against the remaining individual defendants (Deutsch, Ging, Zurcher and Cestra) are found in paragraphs 40 and 41 of the complaint. Paragraph 40 alleges that Michalski contacted individual defendants Deutsch, Ging, Zurcher and Cestra and that Michalski explained the circumstances of his dismissal and also related that he "had nothing left to live for and that Ferderbar and Mark Phillips were going to pay for putting him in his present situation." Paragraph 41 alleges that the aforementioned defendants "made no effort to contact either Ferderbar, Mark Phillips or the police departments . . . ." These two paragraphs contain the only allegations that pertain to the remaining individual defendants specifically. Not only do these allegations fail to allege any affirmative actions, we further conclude that foreseeability was also not alleged against these remaining defendants.

The complaint also fails against these defendants because it has not been alleged that any actions on their part enhanced the risk of that harm. As the District Court indicated, these defendants were not accused of the actions attributed to defendants Tush and Craig or to defendant Nussbaum. No alleged actions of these remaining defendants could be viewed as enhancing the risk of harm to Mark Phillips and for that reason, "foreseeability" was not properly alleged here.

27

Once the foreseeability element of the state-created danger test has been determined, the complaint must also allege that the attack or harm is a "fairly direct" result of the defendant's acts. Such "directness" has been adequately pleaded against defendants Tush and Craig. Although this inquiry is unavoidably fact specific for each individual case, a distinction exists between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a "random" individual with no connection to the harm-causing party. *See Morse*, 132 F.3d at 909 (to satisfy the first element "the harm visited on the plaintiffs [must be] more foreseeable than the random attack."). In *Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003), for example, we reversed the District Court's finding that the harm caused to the plaintiff was not foreseeable because it was not fairly direct. In so doing, we concluded that the fact that some of the police officers were aware of Smith's mental and medical conditions combined with the obviously stressful position they placed him in created the foreseeable possibility that Smith could be injured or killed, especially with the knowledge that he was without his medication. *See Smith,* 318 F.3d at 507.

In *Morse,* however, we held as a matter of law, that defendants could not have foreseen that allowing construction workers to use an unlocked back door could also permit a mentally disturbed individual to enter and cause harm to an individual in the school. *See Morse* 132 F.3d at 908. Put another way, the harm was not "fairly direct."

Here, the harm caused to Phillips was a fairly direct result of Tush and Craig's actions. First, unlike in *Morse*, Mark

28

Phillips was not a random individual who "happened" to be in the path of danger. Rather, Mark Phillips was the new boyfriend of Michalski's former girlfriend. The complaint alleges that Michalski knew that Mark Phillips was Ferderbar's new boyfriend. The complaint also alleges that Tush and Craig knew that Michalski was distraught and that he had threatened to make Mark Phillips "pay." We conclude that this sufficiently pleads that the attack and murder of Mark Phillips was a "fairly direct" result of Tush and Craig's activities. Far from being unrelated to an intervening third party, for example, Mark Phillips was an individual directly affected by these defendants' decisions. It is reasonable to infer from the complaint that Michalski used the time, access and information given to him by the defendants to plan an assault on Mark Phillips and Ferderbar.

## C.

Next, we turn to the question of whether Phillips has properly alleged that Tush and Craig acted with a degree of culpability that "shocks the conscience." *Bright*, 443 F.3d at 281. This determination depends largely on the circumstances of the case.

Our most recent discussion of the culpability element of the state-created danger test can be found in *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006), an opinion issued four months after our decision in *Bright*. In *Sanford*, the plaintiff was the mother of a 16-year-old boy who committed suicide a short time after he had spoken with a high school guidance counselor who had inquired as to the boy's welfare and whether he had any plans to

29

harm himself. *Sanford*, 456 F.3d at 301. The boy, Michael Sanford, had sent a note to a former girlfriend in which he said "I've heard 3 different stories about you & Ryan. The one I heard almost made me want to kill myself." *Id.* at 299. The former girlfriend went to a guidance counselor with the note, expressing concern for Michael, as well as indicating that she wanted him to stop "bugging" her. *Id.* After reviewing the note, a guidance counselor, Pamela Stiles, called Michael into her office and had a discussion with him to explore whether he was upset. *Id.* Stiles expressly asked Michael if he had any plans to harm himself, to which he responded "definitely not." *Id.* Despite giving this answer, about one week after this meeting, Michael killed himself.

Sanford then filed a claim against Stiles and the school district in which she alleged that the defendants were liable for Michael's death under a state-created danger theory. *Id.* 301. In affirming the district court's summary judgment in favor of the defendants, the *Sanford* court concluded that Sanford had not established that Stiles acted with the requisite degree of culpability to sustain a claim grounded on a state-created danger theory. In so concluding, we held that there is a continuum upon which the degree of culpability required to establish such a claim must be measured, relating to the circumstances of each case.

The time in which the government actors had to respond to an incident is of particular significance. For example, in *Sanford*, we stated that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Id.* at 306. We then concluded that

30

although *intent* to cause harm must be found in a "hyperpressurized environment," where officials are afforded the luxury of a greater degree of deliberation and have time to make "unhurried judgments," *deliberate indifference* is sufficient to support an allegation of culpability. *Id.* We further noted "the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *Id.* Finally, where the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk." *Id.*

Therefore, under *Sanford*, three possible standards can be used to determine whether state action shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm. 456 F.3d at 306. Taking the allegations as true, the complaint leads us to conclude that defendants Tush and Craig were not acting in a "hyperpressurized environment." Instead, they had sufficient time to proceed deliberately. The complaint alleged that Michalski asked Tush and Craig for their help in obtaining confidential computer information on Ferderbar and Mark Phillips, assistance which they ultimately provided. Complaint paragraph 26. Also, at paragraph 40, Michalski telephones Craig and Tush (among others) and tells them that he has "nothing to live for" and that Ferderbar and Mark Phillips "would pay for putting him [Michalski] in this situation." There is no sense of urgency or emergency here either. The complaint

31

does not allege any facts which would lead to an inference that Michalski was on his way to attack Phillips or that he told the dispatchers that he was at Phillips' house. The dispatchers here had no information which would have placed them in a "hyperpressurized environment." Hence, to "shock the conscience," they have to have behaved with deliberate indifference to the results of their actions.[6]

Phillips has alleged sufficient facts, which, if proven, would demonstrate that these defendants were deliberately indifferent, establishing a level of culpability that was conscience-shocking. Accepting the allegations of the complaint as true, the complaint alleges that Tush and Craig were aware that Michalski was distraught over his break up with Ferderbar and yet they assisted him in getting confidential information on Ferderbar and Phillips. Tush and Craig did not have to make any hurried judgments in responding to Michalski's requests for assistance. Unlike most state-created danger cases, Tush and Craig did not have to make a decision at all; they could have refused Michalski's inappropriate requests and terminated his telephone call immediately.

---

[6] *Sanford* is specific: "We again clarify that in *any* state-created danger case, the state actor's behavior must always shock the conscience. But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible. In some circumstances, deliberate indifference will be sufficient. In others, it will not." 456 F.3d at 309.

32

Taking these allegations as true and drawing reasonable inferences therefrom, the complaint does sufficiently allege facts that these defendants not only foresaw the danger of harm their actions presented, but were deliberately indifferent in providing Michalski more confidential information.

The District Court determined that Phillips failed to allege that the defendants' behavior "shocked the conscience" and concluded as a matter of law that the alleged conduct of Tush and Craig in providing Michalski with unauthorized personal information concerning Mark Phillips from the 911 Call Center's network and databases does not rise to the required level of conscience shocking action. The District Court opined that no reasonable dispatcher in the position of these dispatchers would have understood his or her conduct to be conscience-shocking. *Cf. Estate of Smith v. Marasco*, 430 F.3d 140, 154 (3d Cir. 2005). The District Court, again here, was wrong.

First, the District Court's conclusory reliance on *Estate of Smith (Smith II)*, was inappropriate. The discussion in *Smith II* focused on the application of qualified immunity — not whether the plaintiff had appropriately alleged a state-created danger claim.[7] Although such a determination may be germane

---

[7] To decide if an individual government official is entitled to qualified immunity, a court must first "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson*, 212 F.3d at 786 (citation omitted). If plaintiff has alleged such a deprivation, a court

(continued...)

33

when deciding qualified immunity, it is not relevant to a determination at the 12(b)(6) dismissal stage. Second, our test for whether a plaintiff has alleged that an action "shocks the conscience" does not contain a requirement that the actor know his or her actions are "conscience-shocking." The District Court inappropriately imported an element of qualified immunity analysis into its state-created danger analysis.

## D.

Finally, the state-created danger analysis requires that some relationship exist between the state and the plaintiff. The

---

[7](...continued)
should thereafter "proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early "is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right." *Curley v. Klem*, 298 F.3d 271, 277-78 (3d Cir. 2002). A decision as to qualified immunity is "premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Id.* at 278. Following *Wilson*, the District Court should have first decided whether Phillips has alleged the deprivation of a constitutional right. If he has, then, the Court should have determined whether that right was clearly established at the time the individual defendants allegedly violated that right.

34

District Court did not analyze this element. To adequately allege such a relationship, a plaintiff need not plead facts that show the same "special relationship" basis for constitutional liability. *Morse,* 132 F.3d at 912. Instead, the relationship requirement of the third element "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Morse,* 132 F.3d at 912. The relationship that must be established between the state and the plaintiff can be "merely" that the plaintiff was a foreseeable victim, individually or as a member of a distinct class. *See Rivas* 365 F.3d at 202. Such a relationship may exist where the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions. *Morse,* 132 F.3d at 913; *Rivas,* 365 F.3d at 197.

Here, Mark Phillips was a member of a discrete group (namely, Ferderbar and himself) that was subjected to harm by the defendant's actions. He was specifically targeted for retribution by Michalski. Complaint at paragraph 40. Lending more support to Phillips' ability to satisfy this element, Mark Phillips was also in a close personal relationship with Ferderbar, with whom Michalski was infatuated. Tush and Craig were aware of this connection. Moreover, Mark Phillips was specifically contemplated in Michalski's threatened violence. Complaint at paragraph 40. Therefore, Phillips has adequately alleged that there was a relationship between plaintiff and the state for purposes of the state-created danger theory.

E.

35

In sum, the District Court erred in dismissing the state-created danger claims against defendants Tush and Craig. Although we find no error in the dismissal of the state-created danger claims against defendants Nussbaum, Ging, Zurcher and Cestra, we will remand to the District Court with instructions to permit Phillips an opportunity to amend her claims against defendant Nussbaum to allege — if she can — an affirmative act by Nussbaum. We conclude that it would be futile to permit amendment as to the remaining defendants because we conclude that Phillips cannot plead foreseeability on their part.

## IV.

Phillips' complaint additionally alleges violations of equal protection (Counts One and Two). Specifically, the complaint alleges that defendants' actions "were intentional and/or constituted willful disregard, gross recklessness and deliberate indifference for [Mark] Phillips' personal safety, well-being and right to life in derogation of the ... Equal Protection clause ... of the Fourteenth Amendment of the United States Constitution." The District Court recognized that Phillips raised a "class of one" equal protection claim, which is governed by the Supreme Court's holding in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), but dismissed the complaint because Phillips failed to allege that the Defendants intentionally treated Mark Phillips differently from other similarly situated persons.

In *Olech*, a municipality conditioned water service for a property on the plaintiff-owner's granting a 33-foot easement, even though it required only a 15-foot easement from every

36

other property owner. *Id.* at 563. The Supreme Court allowed the plaintiff to proceed on the class-of-one theory, recognizing claims where a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. The Supreme Court stated that allegations of irrational and wholly arbitrary treatment, even without allegations of improper subjective motive, were sufficient to state a claim for relief under equal protection analysis. *Id.* at 565.

We have little jurisprudence discussing this "class of one" theory. Our only precedential opinion to discuss such claims held that

> Our court has not had the opportunity to consider the equal protection "class of one" theory at any length. From the text of *Olech* itself, however, it is clear that, at the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006). So, to state a claim for "class of one" equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment.

37

Although our jurisprudence does not discuss class-of-one equal protection claims in detail, the Court of Appeals for the Second Circuit has gone further and we find its analysis of pleading requirements for these type of claims persuasive. In *Demuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003), the Court of Appeals for the Second Circuit reversed a district court's determination that Demuria had failed to adequately plead a "class of one" equal protection violation. *Demuria* involved a neighbor-to-neighbor dispute concerning water run-off. The plaintiffs had made a "general" and "relatively bare" allegation that the defendant police officer gave them a different standard of police protection than that typically afforded a resident [of the town] and alleged facts that the officer was in violation of his duty as an officer. *DeMuria*, 328 F.3d at 707. The District Court found the allegation that the police officer had treated the DeMurias differently from other citizens to be insufficiently specific for the purpose of maintaining an equal protection claim because the DeMurias did not name any similarly situated individuals or identify any differently-handled disputes.

The Court of Appeals reversed and held that the Supreme Court's holding in *Olech* does not establish a requirement that a plaintiff identify in a complaint actual instances where others have been treated differently for purposes of equal protection. *Id.* at 707. The Supreme Court pointed out that "[i]ndeed, it appears that Olech herself did not 'name names' in her complaint, but made the more general allegation that similarly situated property owners had been asked for a different easement." *Id.* The Supreme Court determined that such an allegation could "fairly be construed" as a sufficient allegation for stating an equal protection claim. *Id.* quoting *Olech*, 528

38

U.S. at 565. In *Demuria*, the plaintiffs made a general allegation that defendant Hawkes gave them a different standard of police protection than that typically afforded a resident of the town. The Court of Appeals found this general allegation to be sufficient and we agree with that determination.

Although *Demuria* does relax the "class of one" pleading requirements by negating the need for specificity, an allegation of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly situated. The District Court here dismissed the complaint because it determined that Phillips had not alleged that the defendants treated the decedent differently from others similarly situated. Phillips' complaint does raise very general accusations. For example, Count One alleges claims against Allegheny County and the Allegheny County 911 Services. In Paragraph 45 of Count One, Phillips alleges that "the actions of the defendant were intentional and/or constituted willful disregard, gross recklessness and deliberate indifference for Phillips' personal safety, well-being and right to life in derogation of the Due Process and Equal Protection clauses of the Fourteenth Amendment." Count Two of the complaint alleges claims against the individual defendants Nussbaum, Tush, Craig, Deustch, Ging, Zurcher and Cestra. In Paragraph 54, the complaint alleges that "the actions of the defendants were intentional and/or constituted willful disregard, gross recklessness and deliberate indifference for Phillips' personal safety, well-being and right to life in derogation of the Due Process Clause and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution."

39

Clearly, both of these counts specifically refer to the Equal Protection Clause. Furthermore, Paragraphs 50 and 58 specifically allege that the defendants' conduct deprived Phillips of his right to life in violation of the Equal Protection Clause. But, these general accusations and the invocation of the Equal Protection Clause are not enough.

We note that the *Olech* decision does not establish a requirement that a plaintiff identify in the complaint specific instances where others have been treated differently for the purposes of equal protection. *See DeMuria*, 328 F.3d at 707. Indeed, in reversing the dismissal of the complaint in *DeMuria*, the Court of Appeals indicated that while the plaintiffs in that case "face[d] a significant hurdle in finding evidence to prove their allegations of selective enforcement and unequal treatment, such concerns should not defeat their claim at the pleading stage." *Id.* Here, however, Phillips' complaint does not contain specific allegations that he was treated differently. The facts section of the Complaint (Paragraphs 17-42) reveals the egregious actions of various individuals at the 911 computer center — actions that are alleged to have led to Phillips' death. However, there is no allegation that these actions resulted in him being treated differently from other individuals — individuals whose personal information is in the 911 database. Paragraph 26 of the Complaint, for example, indicates that "Defendants Tush and Craig assisted Michalski knowing that they were accessing unauthorized personal information that had absolutely no relationship to their functions as dispatchers and [sic] a 911 emergency call center. " This allegation, however does not aver that Phillips was treated differently.

40

The Complaint, in Counts One and Two, does contain a specific reference to the Defendants' intentional actions, which resulted in a violation of the Phillips' rights under the Equal Protection Clause of the Fourteenth Amendment. *See e.g.* Complaint at Paragraphs 45, 54. Again, however, there is no allegation that Phillips was treated differently.

In opposition to a motion to dismiss in the District Court, and again before this Court on appeal, Phillips argues that her complaint alleges that, although other persons similarly situated had personal information accessed only for legitimate 911 purposes, [Mark Phillips] was discriminated against by the individual defendants in that they accessed his personal information to assist Michalski in his attempt to track and eventually kill him. We agree with the District Court's determination that, on the face of the complaint, no such allegation was made. Even under the less stringent pleading standards set forth in *Olech* and *Demuria*, Phillips' class-of-one equal protection claim is inadequately pleaded. Nonetheless, dismissal at this stage was premature and hence, error.

As we indicated above, if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Moreover, we have instructed that a district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* Accordingly, even when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff

41

that he or she has leave to amend the complaint within a set period of time. *See Grayson,* 293 F.3d at 108. A district court may dismiss the action if the plaintiff does not submit an amended pleading within that time, or if the plaintiff files notice with the district court of his intent to stand on the complaint. *See Shane,* 213 F.3d at 116 (citation omitted).

The District Court's memorandum opinion indicates that it dismissed Phillips' Section 1983 claims with prejudice after receiving the parties' briefs on the motion to dismiss. There is no indication that the District Court informed Phillips that she would have leave to amend her complaint. Moreover, the memorandum opinion contained neither a finding that a curative amendment would be inequitable or futile, nor a finding that Phillips had failed to file a timely amended pleading or had filed notice of her intention to stand on the complaint. There is no indication that Phillips wishes to stand on the complaint for purposes of this appeal. Indeed, Phillips argues that, in the event we determine she has failed to state a claim, we remand the matter to the District Court with instructions to permit amendment. *See Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 n. 5 (3d Cir. 1992).

42

## V.

Standards of pleading are not the same as standards of proof. We express no opinion on whether Phillips will ultimately be able to prove her case. At this pleading stage, however, the District Court erred in several respects. Hence, we will reverse the District Court's dismissal of Tush, Craig and Nussbaum, and will remand with instructions to the District Court to permit Phillips an opportunity to amend her state-created danger claims against Nussbaum. We will affirm the District Court's dismissal of the remaining defendants.

Although we conclude that the District Court did not err in its analysis of Phillips' equal protection claim, we will remand this claim as well, once again instructing the District Court to provide Phillips an opportunity to amend her complaint.

**ROTH**, Circuit Judge, Concurring:

I concur in the opinion of the majority. I write separately to note a potential issue that could be created by broad application of the "class of one doctrine."

In the context of a substantive due process claim, the Supreme Court has established that to recover a plaintiff must establish that the behavior of the government "shocks the conscience" of a reasonable observer. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). That is, the government's behavior

43

must be not just arbitrary and capricious, but shocking.

In contrast, a plaintiff proceeding under an equal protection "class of one" theory may recover if she can establish that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 428 U.S. 562 (2000). Phillips is proceeding here on such a theory.

A broad reading of *Olech* could allow any plaintiff with an insufficiently shocking due process claim to resurrect her constitutional claim by repleading her case as representing a "class of one" victimized by the particular government action at issue.[8] I do not believe that the Supreme Court intended *Olech* to undermine *Lewis* in this fashion, and I would urge the District Court to be mindful of this issue as it conducts further proceedings in this case.

---

[8] On the facts of Lewis itself, the representatives of the deceased motorcycle passenger could argue that while the officer's actions in beginning a high speed pursuit might not shock the conscience, the officer did treat that particular motorcyclist differently than other similarly situated motorcyclists and that there was no rational basis for such a decision.

44

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 06-2869

---

JEANNE PHILLIPS, Administratrix of the
Estate of Mark Phillips, deceased,

Appellant

v.

COUNTY OF ALLEGHENY; NORTHWEST REGIONAL
COMMUNICATIONS; ALLEGHENY COUNTY 9-1-1,
f/k/a NORTHWEST REGIONAL COMMUNICATIONS;
DANIEL NUSSBAUM; DANIELLE TUSH; BRIAN
CRAIG; LEONARD DEUTSCH; RYAN GING; SUSAN
ZURCHER; PHILLIP CESTRA

---

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. No. 05-cv-1502)
District Judge:  The Honorable Arthur J. Schwab

---

ARGUED JUNE 26, 2007

BEFORE: FISHER, NYGAARD,
and ROTH, Circuit Judges.

---

JUDGMENT

---

This cause came to be heard on the record from the United States District Court for
the Western District of Pennsylvania and was argued by counsel on June 26, 2007.

On consideration whereof, it is now here ORDERED AND ADJUDGED by this
Court that the order of the said District Court entered on May 15, 2006 dismissing

the Appellant's complaint be, and the same is hereby REVERSED. We REMAND the cause with instructions to the District Court to permit Appellant an opportunity to AMEND her complaint, if amendment is not deemed to be futile.

Costs are taxed against the Appellee. All of the above in accordance with the opinion of this Court.

ATTEST:

/s/ Marcia M. Waldron
Clerk

Date: February 5, 2008

## CERTIFICATE OF SERVICE

I hereby certify that two (2) copies of the foregoing Petition of Appellees Northwest Regional Communications, Daniel Nussbaum, Danielle Tush, Brian Craig, Leonard Deutsch, Susan Zurcher, and Phillip Cestra [Jr.] for Rehearing and Suggestion for Rehearing En Banc were served upon the following counsel of record for Plaintiffs via Federal Express (for delivery on February 19, 2008) on February 18, 2008, addressed as follows:

Philip A. Ignelzi, Esquire
Michael A. Murphy, Esquire
Ogg, Cordes, Murphy & Ignelzi, LLP
245 Fort Pitt Blvd.
Pittsburgh, PA 15222

Wendy Kobee, Esquire
Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Blvd.
Pittsburgh, PA 15219

Pursuant to the Third Circuit's March 3, 2003 Order Establishing a Temporary Local Rule for Electronic Filing of Petitions for Rehearing, the within Petition is being filed electronically on February 18, 2008, and the signed original is being sent on February 18, 2008, via Federal Express (for delivery on February 19, 2008) to the Clerk of Court of the Third Circuit Court of Appeals.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By:    /s/ Alan E. Johnson
       ALAN E. JOHNSON  PA89690
       SCOTT G. DUNLOP  PA41638
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA 15219
Phone: (412) 803-1140
Fax: (412) 803-1188
aejohnson@mdwcg.com

Attorneys for Defendants-Appellees
Northwest Regional Communications,
Daniel Nussbaum, Danielle Tush, Brian
Craig, Leonard Deutsch, Ryan Ging, Susan
Zurcher, and Phillip Cestra [Jr.]

12/588081.v1